# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

KAMERON TUNSTALL,

                    Petitioner,          :     Case No. 1:22-cv-280

      - vs -                          District Judge Michael R. Barrett
                                          Magistrate Judge Michael R. Merz

WARDEN, Madison Correctional
  Institution,

                                        :
                  Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought by Petitioner Kameron Tunstall with the assistance of counsel, is before the Court for decision on the merits.  Relevant pleadings are the Petition (ECF No. 3), the State Court Record (ECF No. 7) Respondent's Return of Writ (ECF No. 8) and Petitioner's Traverse (ECF No. 14).  The Magistrate Judge *sua sponte* ordered the record expanded to include a transcript of the pretrial hearing on admission of 404(B) evidence (ECF No. 16) and that transcript has now been filed (ECF No. 18).

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in this District (ECF No. 15).

**Litigation History**

A Butler County, Ohio[1], grand jury indicted Petitioner Tunstall on September 10, 2018, on one count of murder in violation of Ohio Revised Code § 2903.02(A); one count of murder in violation of Ohio Revised Code § 2903.02(B); two counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1); two counts of felonious assault in violation of Ohio Revised Code § 2903.11(A)(2); and one count of discharge of a firearm on or near prohibited premises in violation of Ohio Revised Code § 2923.162(A)(3)(Indictment, State Court Record, ECF No. 11, Ex. 1).  Each count except the last carried a firearm specification. A jury convicted Tunstall on all counts and he was sentenced to fifteen years to life for murder with a mandatory three years consecutive term on the firearm specification (Judgment, State Court Record, ECF No. 11, Exs. 11, 12).

Tunstall appealed with new counsel to the Ohio Twelfth District Court of Appeals which affirmed the conviction.  *State v. Tunstall,* 2020-Ohio-5124 (Ohio App. 12th Dist. Nov. 2, 2020). The Supreme Court of Ohio declined jurisdiction over a subsequent appeal.  *State v. Tunstall,* 161 Ohio St. 3d 1451 (2021).

Tunstall filed his Petition for Writ of Habeas Corpus in this Court on May 22, 2022, pleading the following grounds for relief:

> **Ground One:** Where the trial court did not engage in the mandated 403 balancing process or it is impossible from the record to tell whether it did so, the Twelfth District Court of Appeals violated Mr. Tunstall's constitutional rights to due process and a fair trial when it failed to vacate Kameron's convictions and remand the case for a new 403 hearing and trial.

---

[1] Counsel for both parties seem confused about the county of conviction.  Petitioner asks this Court to overturn a conviction in the Adams County Court of Common Pleas affirmed by the Fourth District Court of Appeals (Petition, ECF No. 3, PageID 28).  Respondent asserts the county of conviction is Clinton County (Return, ECF No. 8, PageID 1054).  This is a Butler County case, appealed to the Twelfth District Court of Appeals.

> **Ground Two:** The Twelfth District Court of Appeals violated Mr. Tunstall's constitutional right to due process when it failed to apply the standard of review set forth in *Strickland*.
>
> **Ground Three:** The Twelfth District Court of Appeals' analysis of trial court's instructional error regarding the limited purpose for which the jury could consider the 404(B) gang affiliation evidence was contrary to law, thereby violating Mr. Tunstall's constitutional rights to due process and a fair trial.

(Petition, Doc. No. 1,[2] PageID 36-51).

# Analysis

## Ground One:  Trial Court Failure to Engage in Mandated Rule 403 Balancing

In his First Ground for Relief, Tunstall asserts the trial judge did not engage in the balancing required by Ohio R. Evid. 403 before admitting gang affiliation evidence and thereby deprived him of due process and a fair trial.

Ten days prior to trial, the prosecutor gave written notice of his intention to use "other acts" evidence pursuant to Ohio R. Evid. 404(B)(State Court Record, ECF No. 11, Ex. 6). Specifically, he stated "the State intends to introduce evidence that Defendant Kameron Tunstall and Co-Defendant Miquan Hubbard were members of a gang, and that several individuals in the group of people that were shot at were members of an opposing gang." *Id.* at PageID 1154.  Rather than character evidence to prove propensity to commit crimes, the State professed the purpose of the

---

[2] The Petition is filed at both ECF No. 1 and ECF No. 3.  The Clerk required the Petition to be re-filed because the original filing was not in .pdf text searchable format as required by S. D. Ohio Civ. R. 5.1 (See Clerk's Notice ECF No. 2).  Neither form of the filing complies with Rule 2(d) of the Rules Governing § 2254 Cases.

other acts evidence was "to show motive, intent, planning or preparation," *Id.* at PageID 1155.

The Court of Appeals found the trial court heard argument on this Notice just prior to the trial and ruled it was admissible.

> {¶4} Defense counsel objected to the use of 404(B) evidence at a pretrial hearing held immediately before appellant's jury trial commenced. Defense counsel argued that the introduction of gang-related evidence was unnecessary to the state's presentation of its case and that the probative value of such evidence was substantially outweighed by danger of unfair prejudice. The trial court overruled defense counsel's objection, stating that, "[u]nless things come out differently as far as testimony is concerned from that which I expect to come out based upon the proffer that's been given [by the state], this kind of testimony – this kind of evidence will be permitted to be used by the State in the trial today."

*State v. Tunstall, supra.*[3]

Tunstall presented his other acts evidence claim as his first assignment of error on appeal and the Twelfth District decided it as follows:

> {¶28} Assignment of Error No. 1:
>
> {¶29} THE TRIAL COURT ERRED IN FINDING THE STATE'S PROFFERED OTHER-ACTS EVIDENCE FIT, AS A MATTER OF LAW, WITHIN AN EVID.R. 404(B) ENUMERATED CATEGORY, THEREBY DENYING [APPELLANT] HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
>
> {¶30} In his first assignment of error, appellant argues the trial court erred when it allowed the state to introduce "unnecessary, irrelevant and highly prejudicial evidence [that appellant and Hubbard] were members of a gang extracting revenge on an opposing gang member." Appellant contends evidence of his and Hubbard's affiliation with the 30 Gang was not relevant to show motive and, even if it were relevant, the probative value of the evidence was substantially outweighed by the prejudice of admitting the evidence. With respect to the latter issue, appellant contends the trial court erred by not setting forth a detailed analysis under Evid.R. 403 before admitting the gang affiliation evidence at trial.

---

[3] Apparently the appellate court had a transcript of this pre-trial hearing in the record before it. That transcript was not part of the original State Court Record filed here, but was added as a result of a *sua sponte* expansion of the record (See ECF No. 16, 18).

{¶31} Prior to trial, the state filed a notice of its intent to present evidence in accordance with Evid.R. 404(B) that appellant and Hubbard were members of the 30 Gang and that several individuals in the group of people shot at on August 29, 2018 were members of the rival Ru Gang. The state argued evidence of appellant's gang affiliation was admissible under Evid.R. 404(B) "to show motive, intent, planning or preparation" for the shooting, as well as to show the "interrelationship between people" and provide context for the crimes charged. Appellant objected to the admission of the evidence at a pretrial hearing, and the trial court ultimately ruled that the evidence would be admissible at trial. Subsequently, at trial the state was permitted, over defense counsel's objection, to introduce Officer Johnson's testimony that 30 Gang member Frierson associated with appellant, photographs taken August 8 and 9, 2018 depicting appellant and Hubbard flashing gang signs, and a Snapchat video depicting appellant flashing 30 Gang signs.

{¶32} Other witnesses for the prosecution testified about gang-related events without any objection from the defense. For instance, Sergeant Crouch and Officer Johnson testified about the rivalry of the 30 Gang and Ru Gang, which dated back to Goens' 2016 murder, and specific gang signs associated with the 30 Gang. Schooler testified about known Ru Gang members who were standing outside South Front Street on the day of the shooting and appellant and Hubbard's reference to these gang members as "the ops."[4] Rylie testified about Snapchat messages sent between herself and appellant in which they discussed "the ops" gang member Davis, "gang shit," and "beef" appellant had with "the ops." As defense counsel failed to object to this testimony, appellant waived all but plain error. *See, e.g., State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶ 72.

{¶33} "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime. Other-acts evidence may, however, be admissible for another non-character-based purpose, such as 'motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.'" *State v. Smith*, Slip Opinion No. 2020-Ohio-4441, ¶ 36, quoting Evid.R. 404(B). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *State v. Hartman*, Slip Opinion No. 2020-Ohio-4440, ¶ 22.

---

[4] In transcribing the pretrial conference, the court reporter rendered this word as "ox." "Ops," understood as an abbreviation for "opposition," is correct, as the court of appeals read it.

The other acts evidence "is admissible when the evidence is probative of a separate, nonpropensity-based issue." *Id.*

{¶34} In two recently decided cases, the Ohio Supreme Court "provided a guide for courts to evaluate proposed other-acts evidence to determine whether the evidence connects to a permissible purpose without relying on any improper character references." *Smith* at ¶ 37. *See also Hartman* at ¶ 19. The first question, or the threshold question, that a court must ask itself is whether the other-acts evidence is relevant. *Id.* at ¶ 24; *Smith* at ¶ 37. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "In the Evid.R. 404(B) context, the relevance examination asks whether the proffered evidence is relevant to the particular purpose for which it is offered, as well as whether it is relevant to an issue that is actually in dispute." *Smith* at ¶ 37, citing *Hartman* at ¶ 26-27.

{¶35} "If the evidence is not premised on improper character inferences and is probative of an issue in the case," the court moves on to the next step of the analysis. *Id.* at ¶ 38. The court must then consider "whether the evidence's value 'is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' " *Id.*, quoting Evid.R. 403(A). *See also Hartman* at ¶ 29. As other-acts evidence " 'almost always carries some risk that the jury will draw the forbidden propensity inference,' courts should be vigilant in balancing the prejudicial impact of the evidence against its probative value." *Smith* at ¶ 38, quoting *Hartman* at ¶ 33. *See also United States v. Gomez*, 763 F.3d 845, 857 (7th Cir. 2014).

{¶36} "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) [for a nonpropensity-based issue] is a question of law." *Hartman* at ¶ 22. However, a trial court's determination that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice is an "issue that involves an exercise of judgment" and "should be reviewed for an abuse of discretion." *Id.* at ¶ 30.

{¶37} Applying the aforementioned standard to the evidence in this case, we find that the trial court did not err in allowing the state to present the gang affiliation evidence under Evid.R. 404(B). The evidence was admissible to show motive and a plan for the shooting.

## A. Motive

6

{¶38} "Motive evidence establishes that the accused had a specific reason to commit a crime." *Hartman*, 2020-Ohio-4440 at ¶ 48. "There need be no similarity between the other-acts evidence and the crime charged under a motive theory; 'a dissimilar prior act is just as feasible in supplying a motive for committing a crime as is a similar prior act.'" *Id.*, quoting Weissenberger, *Federal Evidence*, Section 404:16 (7th Ed.2019).

{¶39} The state's theory of the case was that appellant, a member of the 30 Gang, aided and abetted Hubbard, a fellow 30 Gang member, in shooting at rival Ru Gang members in retaliation for a rap video the Ru Gang released disparaging fallen 30 Gang member Goens. Evidence relating to appellant's gang involvement and his rivalry with known Ru Gang members was relevant and admissible to prove appellant's motive for assisting in the shooting at 801 South Front Street. *See Drummond*, 2006-Ohio-5084 at ¶ 75-76 (finding that evidence relating to a defendant's gang affiliation was relevant to showing the defendant's motive in shooting at an individual believed to belong to a rival gang); *State v. Houston*, 8th Dist. Cuyahoga No. 104752, 2017-Ohio-4179, ¶ 43-45 (finding that videos of a defendant making gang signs and text messages the defendant sent disparaging a rival gang were admissible under Evid.R. 404[B] as they were "probative of his guilt and explained his motive for the crimes – to seek revenge on a rival gang"). "A defendant's gang affiliation can be relevant and is admissible in cases 'where the interrelationship between people is a central issue.' " *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 170, quoting *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999). Evidence of a defendant's gang membership can provide "context, motive, and set-up of the crime and * * * 'make the actions of the participants understandable to the jurors.' " *Drummond* at ¶ 76, quoting *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 113.

{¶40} Here, appellant's affiliation with the 30 Gang, as well as Davis', Goolsby's, and Burns' affiliation with the rival Ru Gang, was relevant to explain why appellant provided a handgun and acted as a scout for Hubbard immediately before Hubbard fired 15 rounds from a firearm at Ru Gang members congregating at 801 South Front Street. Furthermore, testimony about 30 Gang hand signs and images of appellant making such signs were relevant to understanding appellant's membership and loyalty to the 30 Gang and aided in the jurors understanding of appellant's motive in assisting Hubbard in the shooting. We therefore find that, as a matter of law, the gang affiliation other-acts evidence was admissible for the nonpropensity-based purpose of demonstrating motive.

**B. Plan Evidence**

{¶41} Additionally, we find that the jail-recording of appellant's phone call with 30 Gang member Frierson, and appellant's references to Davis, Burns, and other Ru Gang members as "the ops," was admissible 404(B) plan evidence, as it was intrinsically connected to the crimes that occurred on August 29, 2018.

{¶42} As the supreme court recently explained, "plan evidence need not share any common characteristics with the current crime; rather, the other acts are linked to the present crime because they are carried out in furtherance of the same overall plan." *Hartman*, 2020-Ohio-4440 at ¶ 40. Plan evidence "generally concerns events that are 'inextricably related' to the crime charged." *Id.* at ¶ 41, citing Weissenberger at Section 404:18. "The other acts form the 'immediate background' of the present crime; they are typically either part of the 'same transaction' as the crime for which the defendant is on trial or they are part of 'a sequence of events' leading up to the commission of the crime in question." *Id.* Plan evidence is often " 'relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, and his intention, where any of these is in dispute.' " *Id.*, quoting McCormick, *Evidence*, Section 190, at 448-449 (2d Ed.1972).

{¶43} Appellant's phone call with Frierson and his reference to Ru Gang members as "the ops" were part of a sequence of events leading up to the shooting. Appellant's phone call with Frierson occurred less than two hours before the shooting, and on the phone call, appellant can be heard making threats after stating he was with Hubbard and Schooler and that KG had been disrespected on Snapchat. Specifically, appellant states, "You already know what time it is. * * * I can't wait till I see him. It's over for him." Appellant's statement indicated a plan for action. A plan that is later carried out when appellant sees Davis, Goolsby, and Burns, "the ops," standing in front of 801 South Front Street. Appellant and Hubbard were overheard by Schooler commenting to one another "the ops are outside" as she drove South Front Street. Less than a half-hour later, 15 shots were fired at "the ops." The jail phone call and evidence of appellant's reference to Ru Gang members as "the ops" was inextricably related to his motive in assisting Hubbard with the shooting and was therefore admissible for the nonpropensity-based purpose of showing appellant's planned participation in the criminal act.

**C. Evid.R. 403(A) Analysis**

{¶44} Turning to the next step in the analysis, we find that the trial court did not abuse its discretion in admitting the 404(B) evidence as the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. In so finding, we first note that Evid.R. 403(A) does not require a trial court to explicitly state its findings regarding its application of the rule. A court is not required to state in a judgment entry that the probative value of the other acts evidence outweighs its prejudicial impact. *See State v. Froman*, Slip Opinion No. 2020-Ohio-4523, ¶ 46, citing *State v. Bey*, 85 Ohio St.3d 487, 489 (1999). Though a trial court's analysis under Evid.R. 403(A) "should be robust"; *see Hartman* at ¶ 29; "[a] trial court's failure to explicitly state its findings regarding its weighing process under Evid.R. 403(A) [is] not error." *Froman* at ¶ 46. Here, the trial court heard argument from the parties about the relevance of the gang affiliation evidence, weighed the evidence's probative value against appellant's assertions of prejudicial affect, and ultimately concluded that the evidence was admissible. Contrary to appellant's arguments, the court was not required to set forth a detailed analysis or explicitly state its findings regarding its weighing process.

{¶45} Moreover, based on the facts of this case, we cannot say that the evidence of gang affiliation was unduly prejudicial or that the trial court's decision to admit the evidence was unreasonable. While it is true that evidence of gang membership creates some risk of unfair prejudice; *see Bethel*, 2006-Ohio-4853 at ¶ 172; the state's use of the evidence was restrained. Law enforcement's testimony about the Ru Gang and 30 Gang was limited to relevant membership, the type of hand signs the 30 Gang flashed, and background on the rivalry between the two factions following Goens' death. The state did not present any testimony or evidence of illegal activity that 30 Gang members were involved in or mention any gang activities that appellant or Hubbard were known to have participated in, outside of the events that either occurred on August 29, 2018 or that were inextricably related to those events. Furthermore, with respect to the Snapchat video and two photographs that were admitted into evidence showing appellant and Hubbard flashing 30 Gang signs, the images were not inflammatory as they did not depict any illegal actions, firearms, drugs, or other images that would serve to provoke a juror's prejudice.

{¶46} Accordingly, in light of the relevance of appellant's gang affiliation and the state's minimal use of that evidence, the danger of unfair prejudice did not substantially outweigh the probative value of the gang evidence. *See Bethel* at ¶ 173. For the reasons stated

> above, we find that the trial court did not abuse its discretion or
> otherwise err in admitting evidence of appellant's gang affiliation at
> trial pursuant to Evid.R. 404(B). Moreover, to the extent that
> appellant has argued that the state erred by referencing the 404(B)
> gang affiliation evidence during closing statements, we find no merit
> to his argument. As the gang affiliation evidence was properly
> admitted at trial, the state was entitled to reference it during its
> closing statement. *See State v. Clark*, 12th Dist. Warren No.
> CA2007-03-037, 2008-Ohio-5208, ¶ 64. Appellant's first
> assignment of error is, therefore, overruled.

*State v. Tunstall, supra.*

As can be readily seen, analysis under Evid. R. 403 forms only a portion of the Twelfth

District's analysis of the First Assignment of Error.  Indeed, the opinion deals with the **substance**

of the Rule 403 question and concludes, applying an abuse of discretion standard, that the trial

court's Rule 403 ruling can stand.

In this Court Tunstall directs his focus to the **form** of the 403 ruling.  He claims that the

trial judge either did not engage in the 403 balancing process or did not produce a record of having

done so and this make his conviction unconstitutional.

The Twelfth District explicitly held that "Contrary to appellant's arguments, the court was

not required to set forth a detailed analysis or explicitly state its findings regarding its weighing

process."  In making that ruling, the Twelfth District gives no indication it understands itself to be

deciding the constitutional question Tunstall presents here, to wit, that a detailed set of 403 findings

is constitutionally required.  Tunstall certainly made no such constitutional argument to the

Twelfth District.  Instead, he argued that admission of the 404 evidence, rather than the form in

which the decision to admit was rendered, made the conviction unconstitutional.  (See Appellant's

Brief, State Court Record, ECF No. 11, PageID 1197).

As Respondent notes, any constitutional claim raised in habeas must first have been fairly

presented as a constitutional claim to the state courts in a way which provides them with an

opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

Petitioner responds to the fair presentation argument in conclusory fashion: "Mr. Tunstall presented his constitutional claims to the Twelfth District Court of Appeals and to the Ohio Supreme Court for consideration, and therefore, has complied with 28 U.S.C. §2254(b)(1)(A)." (Traverse, ECF No. 14, PageID 2175). This assertion is made without citation or elaboration.

A claim has been fairly presented to the state courts if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk,* 871 F.3d 390, 418 (6th Cir. 2017).

As Petitioner stated his First Assignment of Error, it was that the trial court's Rule 404 and 403 rulings denied him "his constitutional right to a fair trial." (Appellant Brief, State Court Record, ECF No. 11, PageID 1197). Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute fairly presenting a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional

argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

In support of his First Assignment of Error, Petitioner cited the following cases: *State v. Cunningham,* 2006-Ohio-6373 (10th Dist.); *State v. Hancock,* 108 Ohio St.3d 57 (2006); *State v. Webster,* 2016-Ohio-2624 (8th Dist.); *State v. Williams,* 134 Ohio St.3d 521 (2012); *United States v. Jobson,* 102 F .3d 214 (6th Cir. 1996); *United States v. Johnson,* 27 F.3d 1186 (6th Cir. 1994); and *United States v. Merriweather,* 78 F.3d 1070 (6th Cir. 1996). In *Cunningham*, the 404(B) question was decided as a matter of Ohio evidence law, not federal constitutional law. *Hancock*, a death penalty case, contains no 404(B) analysis at all. *Webster* mentions Rule 404 only in the context of a joinder argument. In *Williams* the Ohio Supreme Court applied Rules 404 and 403 directly to hold other acts evidence was not offered for an improper purpose and that its probative value was not outweighed by its prejudicial effect.

In *Jobson*, the Sixth Circuit reversed a conviction for possession of a firearm by a felon, finding other acts evidence of gang membership was not probative of knowledge or intent; gang membership was admissible to establish opportunity to possess a semiautomatic assault rifle; and failure to find that probative value of other acts evidence outweighed prejudice was error. The court noted that, as it had held in *Merriweather*, it was willing to honor an implicit 403 ruling. The court gives no hint that an explicit 403 ruling is required, which would be inconsistent with *Merriweather*.

In *Johnson* the Sixth Circuit held that the Rule 403 balancing must take place as a matter of federal evidence law, not constitutional law. It did not hold that such balancing is required by the Constitution, much less that the Constitution required it be expressed in a particular form.

In *Merriweather* the Sixth Circuit noted that Rule 403 balancing is required with respect

to 404(B) evidence and noted that such balancing had not taken place, "on the record at least." 78 F.3d at 1076. However, it reversed the conviction because the other acts evidence did not satisfy Rule 404(B), and not because any evaluation under Rule 403 did not take a particular form.

The Magistrate Judge notes that all of the cases cited in support of the First Assignment of Error relied on interpreting Ohio or Federal Rule of Evidence 404 and 403. None of them purported to be made on constitutional grounds. Thus it cannot be said that Tunstall fairly presented his First Ground for Relief in state court by relying on any cases that fit the *Hand v. Houk* standard. The First Ground for Relief is therefore procedurally defaulted. Petitioner presents no excusing cause and prejudice because he claims he in fact did fairly present this as a constitutional claim.

In the alternative, Petitioner's First Ground for Relief is without merit. The Twelfth District plainly decided the First Assignment of Error on the merits. If this Court ignores the procedural default for some reason and concludes the Twelfth District decided this claim as a constitutional claim on the merits, then we must still defer to the Twelfth District's decision unless it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000).

In the Petition Tunstall asserts:

> The United States Supreme Court mandates that a trial court conduct a Rule 403 analysis prior to determining admissibility because evidence of other crimes, wrongs or acts carries with it the inherent potential to see the defendant simply as a bad person and then to convict because of who he is rather than what he did.

(ECF No. 1, citing *United States* v. *Abel*, 469 U. S. 45, 54 (1984); and *United States v. Merriweather*, 78 F.3d 1070, 76-77 (6th Cir.1996)[5]. As noted above, *Merriweather* does not

---

[5] Petitioner notes that *Pullman-Standard* v. *Swint*, 456 U. S. 273, 291 (1982), provides that when a district court "fail[s] to make a finding because of an erroneous view of the law, the usual rule is that there should be a remand for

mandate a form for recording the result of a trial court's 403 balancing and of course it is not Supreme Court precedent.  In *Abel* the Supreme Court reversed a Ninth Circuit's exclusion of evidence of defendant's gang membership.  Nothing in the decision speaks to the form a Rule 403 finding must take.

In his Traverse Petitioner again cites *Merriweather* and *Abel* (ECF No. 14, PageID 2175)*.* He also relies on *Huddleston v. United States*, 485 U.S. 681 (1988), but *Huddleston* says nothing about the form of a 403 ruling.  Petitioner also cites *Koon v. United States*, 518 U.S. 81, 100 (1996) for the proposition that a district court by definition abuses its discretion when it makes an error of law.  However a state court abuse of discretion is not reviewable in habeas corpus because abuse of discretion is not a denial of due process *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995).

Tunstall's First Ground for Relief is both procedurally defaulted and without merit.  It should therefore be dismissed with prejudice.

## Ground Two:  Failure to Apply Correct Legal Standard in Deciding Ineffective Assistance Claim

In his Second Ground for Relief, Tunstall asserts he was denied due process when the Twelfth District did not properly apply *Strickland v. Washington,* 466 U.S. 668 (1984), to his ineffective assistance of trial counsel claim (Petition, ECF No. 3, PageID 40).  Indeed, he asserts the Twelfth District's decision is both contrary to *Strickland* and based upon an unreasonable determination of the facts.

---

further proceedings to permit the trial court to make the missing findings." Habeas is, of course, not a form of appeal and we cannot "remand" proceedings to state trial courts.

Tunstall presented his ineffective assistance of trial counsel claim to the Twelfth District as his Third and Fifth Assignments of Error.  The Twelfth District decided them as follows:

{¶58} Assignment of Error No. 3:

{¶59} [APPELLANT'S] ATTORNEYS WERE INEFFECTIVE IN FAILING TO REQUEST LIMITING INSTRUCTIONS REGARDING THE ADMISSIBILITY OF 404(B) GANG AFFILIATION EVIDENCE, THEREBY DEPRIVING [APPELLANT] OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

{¶60} Assignment of Error No. 5:

{¶61} [APPELLANT'S] ATTORNEYS WERE INEFFECTIVE IN FAILING TO SUBMIT A PROPOSED JURY INSTRUCTION ON THE LIMITED USE OF THE 404(B) GANG AFFILIATION EVIDENCE, THEREBY DEPRIVING [APPELLANT] OF HIS SIXTH AMENDMENT RIGHT TO COUNSEL.

{¶62} In his third assignment of error, appellant argues his trial counsel provided ineffective assistance by failing to request that the trial court provide a limiting instruction immediately after the court permitted the 404(B) gang affiliation evidence to be admitted at trial. In his fifth assignment of error, appellant argues his trial counsel provided ineffective representation by failing to request a narrowly tailored limiting instruction that the gang affiliation evidence was relevant only to show appellant's motive in aiding and abetting Hubbard in the shooting. As the two assignments of error are related, we will address them together.

{¶63} "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989) and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.*, citing *Bradley* at paragraphs two and three of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694. The failure to satisfy either the deficiency prong or the prejudice prong of the

test is fatal to a claim of ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

{¶64} As this court has previously recognized, "the failure to seek a limiting instruction does not in and of itself indicate ineffective assistance of counsel." *State v. Cunningham*, 12th Dist. Butler No. CA2017-03-034, 2018-Ohio-912, ¶ 26, citing *State v. Cox*, 12th Dist. Butler No. CA2005-12-513, 2006-Ohio-6075, ¶ 30. "[N]ot requesting a limiting instruction is sometimes a tactical [decision], and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested." *State v. Schaim*, 65 Ohio St.3d 51, 61, fn. 9 (1992).

A. Limiting Instruction When Evidence First Introduced

{¶65} In this case, defense counsel may have decided that requesting a limiting instruction every time gang evidence was admitted at trial would draw undue attention to the evidence. *See, e.g., State v. Glenn-Coulverson*, 10th Dist. Franklin No. 16AP-265, 2017-Ohio-2671, ¶ 58. "There is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Cunningham* at ¶ 25, quoting *Strickland* at 689. "[E]ven debatable trial tactics and strategies do not establish ineffective assistance of counsel." *Id.* Defense counsel's decision not to request a limiting instruction each time 404(B) evidence was admitted at trial, therefore, did not constitute deficient performance. Appellant's third assignment of error is overruled.

B. Limiting Instruction During Final Jury Instructions

{¶66} Defense counsel's failure to request a more narrowly tailored limiting instruction regarding the gang affiliation evidence be given in the court's final jury instructions is troubling. As discussed in our resolution of appellant's fourth assignment of error, the limiting instruction provided to the jury was overly broad and set forth all possible permissible uses for 404(B) evidence: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." As the supreme court recognized in *Hartman*, a broad instruction like this does very little to assist the jury in determining the proper purposes for which other-acts evidence may be considered. *Hartman*, 2020-Ohio-4440 at ¶ 69.

{¶67} We can think of no tactical reason why defense counsel would not have sought a more narrowly tailored instruction. In his closing argument, defense counsel referenced the limiting instruction and

tied the instruction and gang affiliation evidence to proof of motive, stating:

> [W]e have heard a lot in this case about gang affiliation. And there is an instruction that was already read to you by [the] Judge * * * as to any other crimes, evidence or other crimes, wrongs, or acts. And in the middle of that paragraph, it says, "This evidence was not admitted to prove the character of the Defendant or to show that he acted in conformity with that character in the events related to the charted offense. This evidence was admitted, and you may consider it only for certain purposes."
> * * *
>
> [Y]ou have to decide if that evidence has any weight or, if it has weight, what weight does it have, what purpose does it have, in deciding ultimately, motive to commit this crime and whether Mr. Tunstall was complicit in the shooting that resulted in the death of Jaraius Gilbert, Jr. and Datorion – the shooting of Datorion Burns.

Counsel could have, and should have, sought a more narrowly tailored instruction in this case.

{¶68} Nonetheless, given the record before us, we conclude that defense counsel's failure to request a more narrowly tailored limiting instruction did not amount to ineffective assistance of counsel as appellant cannot demonstrate any prejudice. The state presented overwhelming evidence of appellant's complicity to murder, felonious assault, and discharge of a firearm on or near a prohibited premise. In addition to the gang affiliation evidence, which supplied appellant's plan and motive in participating in the shooting, the state demonstrated that appellant provided the handgun Hubbard used in the shooting. The state presented evidence that Rylie loaned appellant a Glock 9 mm handgun and ammunition prior to the shooting, appellant ignored Rylie's requests to return the handgun, and the 15 shell casings recovered from the scene of the shooting were consistent with being fired from a Glock firearm and matched three casings from the handgun's previous firing at Rylie's father's former home.

{¶69} In addition to the firearm testimony, evidence was presented that appellant acted as a scout for Hubbard immediately before the shooting began. After appellant confirmed that Ru Gang members were still standing in front of 801 South Front Street, appellant walked Hubbard down the alley and returned to Schooler's vehicle

mere seconds before Hubbard opened fire. Then, after the shooting, appellant fled from the scene in the same car as Hubbard, making a stop at 859 Central Avenue to dispose of the handgun and a stop at Eisenberg's home to dispose of the hooded sweatshirts he and Hubbard had worn when the shooting occurred. Appellant later sent Eisenberg a message asking her to "get rid" of the sweatshirts, thereby destroying evidence relevant to his crimes. Finally, the state presented cell site location information and data from appellant's cell phone records that tracked appellant's movements on the day of the shooting and demonstrated that his movements mirrored those of Hubbard's, thereby placing appellant with Hubbard at every stage of the crime.

{¶70} Given the overwhelming evidence establishing that appellant aided and abetted Hubbard in the commission of murder, felonious assault, and discharge of a firearm on or near a prohibited premise, we cannot say defense counsel asking for a more specific limiting instruction would have resulted in a different outcome at trial. The gang affiliation evidence admitted at trial provided an explanation, or motive, for appellant's conduct in assisting Hubbard with the shooting, but it was appellant's own actions on the day of the shooting that demonstrated his complicity in the charged offenses. In this case, where there was a restrained use of the gang affiliation evidence, the absence of a narrowly tailored jury instruction did not have a prejudicial effect on appellant's right to a fair trial.[7] Accordingly, for the reasons stated above, we overrule appellant's fifth assignment of error.

*State v. Tunstall,* 2020-Ohio-5124 (Ohio App. 12th Dist. Nov. 2, 2020).

Tunstall asserts this ruling is **contrary to** *Strickland* (Petition, ECF No. 3, PageID 40).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat.

1214)(the "AEDPA"), "contrary to" is a term of art.

When a state court decides on the merits a federal constitutional claim later presented to a

federal habeas court, the federal court must defer to the state court decision unless that decision is

contrary to or an objectively unreasonable application of clearly established precedent of the

United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100

(2011); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); Williams (Terry) v. Taylor, 529 U.S. 362, 379 (2000); *Bell v. Howes,* 703 F.3d 848 (6th Cir. 2012).

"Under the 'contrary to' clause, a federal habeas court may grant the writ 'if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Lang v. Bobby,* 889 F.3d 803, 810 (6th Cir. 2018) (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court." *Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018) (citing *Harrington v. Richter,* 562 U.S. 86, 100 (2011); *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)).

"A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record."

Under this deferential standard, we do not ask "whether the state court's determination was incorrect, but rather whether fair-minded jurists could disagree about whether the state court's decision conflicts with existing Supreme Court caselaw." *Allen v. Mitchell,* 953 F.3d 858 (6th Cir. 2020), quoting *Dewald v. Wriggelsworth*, 748 F.3d 295, 301 (6th Cir. 2014) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

19

As can be seen, the Twelfth District recognized and purported to be following *Strickland*. *Tunstall, supra,* at ¶ 63.  It also quotes the two-prong standard of deficient performance and prejudice adopted in *Strickland* and followed in *Bradley*, the Ohio Supreme Court case that recognized *Strickland* as setting the standard for assessing ineffective assistance claims. Tunstall has not shown the Twelfth District's decision was "contrary to" *Strickland*.

Applying *Strickland*, the Twelfth District effectively found, in deciding Assignment of Error Five, that trial counsel's performance was deficient in not objecting to the final instruction on use of the 404(B) evidence.  However, it went on to decide that that deficiency did not prejudice Tunstall because of the "overwhelming evidence establishing that appellant aided and abetted Hubbard in the commission of murder" and the other charged offenses.  *Tunstall, supra*, at ¶ 70.

Tunstall charges the Twelfth District with applying an incorrect "sufficiency of the evidence" standard to deciding the prejudice question (Petition, ECF No. 3, PageID 40).  This is a red herring; the Twelfth District nowhere purports to apply a sufficiency of the evidence standard. Tunstall claims "What allowed the state to construct its tale of Mr. Tunstall's complicity was irrelevant, unnecessary and highly prejudicial Rule 404(B) gang-affiliation evidence that had no connection to the shootings."  *Id.* at PageID 42.  On the contrary, the Twelfth District notes evidence of Tunstall's activities on the day of the shooting which are tried together by the connective tissue of the gang-affiliation evidence.

As Tunstall concedes in his Traverse, the determinative question is not whether the state court's findings on lack of prejudice are wrong, but whether they are unreasonable (Traverse, ECF No. 14, PageID 2177, citing *Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).  The undersigned concludes they are not.

Tunstall's Second Ground for Relief is without merit and should be dismissed with

prejudice.


**Ground Three:  Trial Court's Limiting Instruction Denied Tunstall Due Process and a Fair Trial**

In his Third Ground for Relief, Tunstall claims the trial court's instruction to the jury on the limited purpose for which they could consider the Rule 404(B) gang affiliation evidence violated his rights to due process and a fair trial.

The instruction of which Tunstall complains is as follows:

> Evidence of other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with that character. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
>
> During the trial, evidence was admitted that, if believed, would indicate other crimes, wrongs, or acts of the Defendant. This evidence was not admitted to prove the character of the Defendant in order to show that he acted in conformity with that character in the events related to the charged offenses. The evidence admitted, and you may consider it only for the purpose – excuse me – of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Petition, ECF No. 3, PageID 48, quoting Transcript, State Court Record, ECF No. 11-1, PageID 1167-68).

Respondent asserts the Third Ground for Relief is procedurally defaulted for the same reason as Ground One, to wit, that it was not fairly presented to the Ohio courts as a federal constitutional claim (Return, ECF No. 12, PageID 2160).  Tunstall makes no response at all to this defense in his Traverse and the Magistrate Judge finds it is well taken.

Tunstall assigned as error the failure of the trial court to *sua sponte* give a proper limiting

instruction about the 404(B) evidence.  He asserted this denied him a fair trial citing *Jobson*, *Johnson*, and *Merriweather* which are inapposite for the reasons given under Ground One.  He makes the same *pro forma* constitutional reference, denial of fair trial, which the cases cited above under Ground One say is insufficient for fair presentation.

Finally, he cites *United States v. Sauza-Martinez,* 217 F.3d 754 (9th Cir. Jul. 6, 2000).  In that case the prosecution violated the Confrontation Clause as interpreted in *Bruton v. United States*, 391 U.S. 123 (1968), by eliciting a hearsay statement from a co-defendant.  The case does not speak at all to the constitutional questions raised by admission of 404(B) evidence.  Tunstall does not satisfy the fair presentation standard of *Hand v. Houk, supra.* His Third Ground for Relief should therefore be dismissed with prejudice as procedurally defaulted.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

August 25, 2023.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge