**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| KAMERON TUNSTALL, | Case No. 1:22-CV-280 |
| Petitioner, | Judge Michael R. Barrett |
| v. | |
| WARDEN, MADISON CORRECTIONAL INSTITUTION, | **OPINION & ORDER** |
| Respondent. | |

This matter is before the Court on the Report and Recommendation ("R&R") and Supplemental R&R of the Magistrate Judge. (Docs. 19, 22). Petitioner Kameron Tunstall has timely objected to both. (Docs. 20, 23). For the following reasons, the Court will adopt the reasoning of the Magistrate Judge and deny the petition with prejudice.

**I.     BACKGROUND**

In 2018, a Butler County grand jury returned an indictment against Tunstall for two counts of murder, four counts of felonious assault, and one count of discharging a firearm on or near prohibited premises; each count was accompanied by a firearm specification. *See State v. Tunstall*, 2020-Ohio-5124, ¶ 2 (12th Dist.). The State alleged that Tunstall "aided and abetted a codefendant, Miquan Hubbard, in Hubbard's discharge of a firearm across a street into a group of individuals." *Id.* "A 13-year-old boy, Jaraius Gilbert, Jr., was killed and another individual, Datorion Burns, was injured." *Id.* Tunstall pleaded not guilty to the charges. *See id.*, ¶ 3.

Prior to trial, the State filed a notice of its intent to present evidence that Tunstall and a Hubbard "were members of a gang, and that several individuals in the group of

1

people that were shot at were members of an opposing gang." *Id.* This evidence was admissible, the State argued, "'to show motive, intent, planning or preparation' for the shooting, as well as to show the 'interrelationship between people' and provide context for the crimes charged." *Id.*, ¶ 31; *see* Ohio Evid. R. 404(B); Ohio Rev. Code § 2945.59. Over the pretrial objections of defense counsel that the evidence "was unnecessary to the state's presentation of its case and that the probative value of such evidence was substantially outweighed by [the] danger of unfair prejudice," the trial court allowed the State's gang-affiliation evidence to be admitted. *Tunstall*, 2020-Ohio-5124, at ¶ 4.

At trial, and over the objections of defense counsel, the court heard testimony from Officer Casey Johnson of the Hamilton Police Department that Tunstall was associated with "30 Gang" member Mekhi Frierson, and the two had spoken by phone on the day of the shooting. *Id.*, ¶ 31. Also over the objections of defense counsel, the State introduced photographs of Tunstall and Hubbard flashing gang signs, and "a Snapchat video depicting [Tunstall] flashing 30 Gang signs." *Id.* Additional gang-affiliation evidence was introduced by the State without objection:

> For instance, Sergeant [Gary] Crouch and Officer Johnson testified about the rivalry of the 30 Gang and Ru Gang, which dated back to [30 Gang member Kalif] Goens' 2016 murder, and specific gang signs associated with the 30 Gang. [Terriona Jordan] Schooler testified about known Ru Gang members who were standing outside South Front Street on the day of the shooting and appellant and Hubbard's reference to these gang members as "the ops." Rylie [Williams] testified about Snapchat messages sent between herself and appellant in which they discussed "the ops" gang member [Damone] Davis, "gang shit," and "beef" appellant had with "the ops."

*Id.*, ¶ 32.

2

Following the presentation of physical evidence and cell phone records gathered pursuant to search warrants, the State rested its case. Tunstall did not call any witnesses in his defense. The jury found Tunstall guilty on all counts, and the court sentenced him to an aggregate term of 21-years-to-life in prison. *Id.*, ¶ 26. Tunstall appealed, raising eight assignments of error: (1) the trial court erred in finding that the State's gang-affiliation evidence fell within an enumerated category of permissible evidence under Rule 404(B); (2) the trial court erred in overruling defense counsel's objections to the admissibility of the gang-affiliation evidence, and then failing to sua sponte issue a limiting instruction regarding the admissibility of the that evidence; (3) trial counsel rendered ineffective assistance by failing to request a limiting instruction at the time the gang-affiliation evidence was introduced; (4) the trial court committed plain error in failing to sua sponte instruct the jury as to the limited purpose for which gang-affiliation evidence may be considered; (5) trial counsel rendered ineffective assistance by failing to submit a proposed jury instruction on the limited use of gang-affiliation evidence; (6) the cumulative effect of the trial court's erroneous evidentiary rulings denied Tunstall his constitutional right to a fair trial; (7) the convictions are against the manifest weight of the evidence; and (8) where the convictions were based on legally insufficient evidence, Tunstall was denied due process, as guaranteed by the Fourteenth Amendment.

On appeal, the Ohio Twelfth District Court of Appeals first held that the gang-affiliation evidence was admissible under Rule 404(B) to show motive and a plan for the shooting, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. In so holding, the court explained that "the trial court heard argument from the parties about the relevance of the gang affiliation evidence,

3

weighed the evidence's probative value against appellant's assertions of prejudicial affect, and ultimately concluded that the evidence was admissible." *Id.*, ¶ 44. And because this reflected a "robust" analysis, "the court was not required to set forth a detailed analysis or explicitly state its findings regarding its weighing process." *Id.*

Turning next to Tunstall's assignments of error regarding limiting instructions, the court looked to the Ohio Rules of Criminal Procedure, which provide that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Ohio Crim. R. 30(A). Such a failure "constitutes a waiver, absent plain error." *Tunstall*, 2020-Ohio-5124, at ¶ 52.

Because defense counsel "did not request that a limiting instruction be given each time his objection to 404(B) evidence was overruled, and the trial court was not required to sua sponte provide one," the court overruled Tunstall's second assignment of error. *Id.*, ¶ 54. And although the court acknowledged that the Rule 404(B) limiting instruction "was overly broad," it looked to Ohio Supreme Court precedent in concluding that "the instruction was substantially similar to the model instruction set forth in the *Ohio Jury Instructions*," and therefore, "the trial court's instruction did not constitute plain error." *Id.*, ¶¶ 56-57 (citing *State v. Smith*, 165 N.E.3d 1123 (Ohio 2020)).

As to Tunstall's first ineffective-assistance claim, the court noted that "the failure to seek a limiting instruction does not in and of itself indicate ineffective assistance of counsel," and posited that "defense counsel may have decided that requesting a limiting instruction every time gang evidence was admitted at trial would draw undue attention to the evidence." *Id.*, ¶ 65. And in light of the strong presumption that counsel's conduct falls

4

within the wide range of reasonable professional assistance, the court held that the decision not to request a limiting instruction upon the introduction of gang-affiliation evidence did not constitute ineffective assistance. *Id.*

In the context of Tunstall's second ineffective-assistance claim, the court viewed defense counsel's strategy with skepticism, finding that the failure to request a more narrowly tailored limiting instruction was "troubling." *Id.*, ¶ 66. Indeed, the court could "think of no tactical reason why defense counsel would not have sought a more narrowly tailored instruction." *Id.*, ¶ 67. Nevertheless, Tunstall could not show prejudice resulting from counsel's failure, particularly because "[t]he state presented overwhelming evidence of [Tunstall's] complicity to murder, felonious assault, and discharge of a firearm on or near a prohibited premise." *Id.*, ¶ 68.

Alongside proof that Tunstall provided the handgun Hubbard used in the shooting, the State presented evidence that Tunstall acted as a scout for Hubbard prior to the shooting, fled the scene in the same car as Hubbard, and disposed of the sweatshirts that he and Hubbard had worn during the shooting. *Id.*, ¶¶ 68-69. The State also introduced cell phone data that tracked Tunstall's location on the day of the shooting "and demonstrated that his movements mirrored those of Hubbard's, thereby placing [him] with Hubbard at every stage of the crime." *Id.*, ¶ 70. Thus, although the gang-affiliation evidence may have provided a motive for Tunstall's conduct, "it was [his] own actions on the day of the shooting that demonstrated his complicity in the charged offenses," and the court could not say that a more specific limiting instruction would have resulted in a different outcome at trial." *Id.*

5

As to Tunstall's assignments of error related to the weight and sufficiency of the evidence upon which his convictions were based, the court provided a thorough summary of the testimony and evidence from which the jury could have found each of the elements of the offenses proven beyond a reasonable doubt. *See id.*, ¶¶ 76-86. Concluding that "[t]he trier of fact did not lose its way or create such a manifest miscarriage of justice that [Tunstall's] convictions must be reversed," the court overruled Tunstall's seventh and eighth assignments of error. *Id.*, ¶ 87. Likewise, the court overruled Tunstall's argument that the cumulative effect of the trial court's alleged errors deprived him of the right to a fair trial. *Id.*, ¶¶ 97-98.

The Ohio Supreme Court declined to exercise jurisdiction over Tunstall's subsequent appeal, *State v. Tunstall*, 163 N.E.3d 593 (Ohio 2021), and this habeas petition followed. Tunstall now raises three grounds for relief: (1) the trial court did not conduct the mandated balancing under Rule 403 (or it is impossible from the record to determine whether it did so), and the appellate court violated Tunstall's constitutional rights to due process and a fair trial when it declined to vacate his convictions and remand the matter for renewed evidentiary review and a new trial; (2) the appellate court violated Tunstall's constitutional right to due process when it failed to properly apply the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984); and (3) the appellate court violated Tunstall's rights to due process and a fair trial when it erroneously analyzed the trial court's alleged instructional failure regarding the limited purpose for which gang-affiliation evidence could be considered. (Doc. 1, PageID 9-22).

Upon review, the Magistrate Judge recommended the denial of habeas relief. Specifically, the Magistrate Judge concluded that Tunstall's first claim for relief is both procedurally defaulted and without merit, his second claim is without merit, and his third claim is procedurally defaulted. Following Tunstall's timely objections, the Magistrate Judge issued a supplemental R&R, to which Tunstall again timely objected. The matter is now ripe for the Court's review.

## II. STANDARDS OF REVIEW

When objections are received to an R&R regarding a dispositive matter, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Upon review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). A general objection is insufficient to preserve any issue for review and "has the same effects as would a failure to object." *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs federal review of § 2254 petitions and imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997). Relief under § 2254 is limited to cases in which a state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

7

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "when the state court confronts facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from its precedent," or "when the state court 'applies a rule that contradicts the governing law set forth in' Supreme Court cases." *Williams v. Coyle*, 260 F.3d 684, 699 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406-07 (2000)). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle, but applies that principle in an objectively unreasonable manner. *England v. Hart*, 970 F.3d 698, 710 (6th Cir. 2020). Notably, an unreasonable application is distinct from an incorrect application in that the former sets "a substantially higher threshold" for relief. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

### III. ANALYSIS

#### a. First Claim for Relief

The Magistrate Judge first observed that the Twelfth District, in holding that the trial court "was not required to set forth a detailed analysis or explicitly state its findings regarding its weighing process," gave no indication that it understood itself to be deciding the constitutional question Tunstall now presents in his petition: "to wit, that a detailed set of [Rule] 403 findings is constitutionally required. Tunstall certainly made no such constitutional argument to the Twelfth District. Instead, he argued that admission of the [Rule] 404 evidence, rather than the form in which the decision to admit was rendered, made the conviction unconstitutional." (Doc. 19, PageID 2219). Consequently, the Magistrate Judge concluded that Tunstall's first claim for relief is procedurally defaulted.

8

"A petitioner may procedurally default a claim by failing to raise it in state court and pursue it through the state's 'established appellate review process.'" *Hruby v. Wilson*, 494 F. App'x 514, 516 (6th Cir. 2012) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "To avoid procedural default, a 'petitioner must fairly present to the state courts either the substance of or the substantial equivalent of the federal claim that he is presenting to a federal habeas court.'" *Id.* (quoting *Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004)); *cf. McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (holding that fair presentation requires a petition to assert "both the factual and legal basis for his claim to the state courts").

In determining whether a petitioner has fairly presented a claim before the state courts, this Court must "ask whether the petitioner: (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017). "While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)).

As a threshold matter, however, the Court concludes Tunstall's claim is not cognizable on federal habeas review. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

9

United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 67-68; *see also Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983) (noting that "errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus."). Consequently, "[a] state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).

Although Tunstall contends generally that the alleged state court evidentiary errors violated his federal "constitutional rights to due process and a fair trial," (Doc. 1, PageID 9), his core argument is best summarized by his own brief to the Twelfth District: "[w]here the trial court failed to comply with the mandatory analysis set forth by the Ohio Supreme Court regarding the admission of Rule 404(B) gang-related evidence, its ruling was an error of law," (Doc. 11, PageID 1216). Tunstall fails to overcome the presumption that "[g]enerally speaking, claims of violation of state law, including state evidentiary error, are not cognizable on a petition for federal habeas corpus relief." *Daniels v. Lafler*, 192 F. App'x 408, 419 (6th Cir. 2006). And because the record does not support Tunstall's objection that he "argued in great detail how the trial court denied him his federal constitutional rights to due process and a fair trial," (Doc. 23, PageID 2252), reasonable jurists would not debate that "this claim is simply not cognizable on habeas review," *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

### b. Second Claim for Relief

Tunstall next asserts that the Twelfth District violated his "constitutional right to due process when it failed to apply the standard of review set forth in *Strickland*" to his ineffective-assistance-of-counsel claims. (Doc. 1, PageID 13). A petitioner advancing an ineffective-assistance claim must show that his attorney's performance was so inadequate as to violate his rights under the Sixth Amendment. *Strickland*, 466 U.S. at 687. "Where the claimant is a state habeas petitioner whose claims are subject to AEDPA, that standard is raised even higher, as the petitioner must show that the state court's application of *Strickland* was itself unreasonable." *Kelly v. Lazaroff*, 846 F.3d 819, 831-32 (6th Cir. 2017).

Under the "performance" prong of *Strickland*'s two-part test, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. However, the Court must "indulge a strong presumption that counsel's conduct falls within a wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.* at 689. Under the "prejudice" prong of *Strickland*, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

In assessing this claim, the Magistrate Judge noted that "[a]pplying Strickland, the Twelfth District effectively found . . . that trial counsel's performance was deficient in not objecting to the final instruction on use of the 404(B) evidence." (Doc. 19, PageID 2229).

But, just as the Magistrate Judge also observed, the Twelfth District "went on to decide that that deficiency did not prejudice Tunstall because of the 'overwhelming evidence establishing that [he] aided and abetted Hubbard in the commission of murder' and the other charged offenses." (*Id.*).

Tunstall argues that the Twelfth District conducted a "sufficiency of the evidence analysis," and contends that "it is a violation of due process to require the appellant to show he could not have been convicted, and not apply the standard of review set forth in *Strickland*." (Doc. 1, PageID 14, 16). However, the record reflects no such error. After accurately quoting the applicable standard from *Strickland* and its Ohio analog, the Twelfth District explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Tunstall*, 2020-Ohio-5124, at ¶ 63 (quoting *State v. Bradley*, 538 N.E.2d 373, 380 (Ohio 1989)). At no point did the Twelfth District require Tunstall to show that he could not have been convicted absent counsel's error. Rather, the court revisited the most compelling evidence from Tunstall's trial and concluded that he could show no reasonable probability of a different outcome had counsel requested a more narrowly tailored limiting instruction. *Id.*, ¶¶ 68-70.

In any event, Tunstall faces an even greater obstacle here. Due to the "doubly deferential" standard, *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009), that arises when "apply[ing] the highly deferential AEDPA standard to the already deferential *Strickland* standard," *Rogers v. Mays*, 69 F.4th 381, 389 (6th Cir. 2023) (en banc), Tunstall must show that the state court adjudication of his claim was itself unreasonable. Because he cannot, reasonable jurists would not disagree that Tunstall is not entitled to relief.

### c. Third Claim for Relief

Tunstall's third and final claim relates to whether the trial court adequately instructed the jury as to the limited purpose for which gang-affiliation evidence could be considered. In his petition, Tunstall asserts that the Twelfth District's allegedly erroneous analysis led to the violation of his federal constitutional rights. (Doc. 1, PageID 20). But Tunstall provides scant support for his position, and the Court cannot find—whether in the petition, the traverse, or the objections—anything more than conclusory statements accompanied by inapposite case law.

Even assuming that Tunstall's perfunctory argument qualifies as anything more than a general objection, "[a] claim regarding jury instructional error will not warrant federal habeas corpus relief unless the error 'so infected the entire trial that the resulting conviction violates due process." *Clark v. Howard*, No. 22-2012, 2023 U.S. App. LEXIS 10224, at *5-6 (6th Cir. Apr. 26, 2023) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Tunstall ultimately has not pointed to any clearly established federal law that was violated by the alleged instructional error, and "[a] trial court's decision about whether to provide a jury instruction is not the kind of fact-based determination subject to scrutiny under § 2254(d)(2)." *McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014). As a result, reasonable jurists would not debate that his third claim is not cognizable on federal habeas review.

### IV. CONCLUSION

For the foregoing reasons, Tunstall's objections, (Docs. 20, 23), are **OVERRULED**, and the Magistrate Judge's R&R and Supplemental R&R, (Docs. 19, 22), are **ADOPTED** in their entirety. Accordingly:

13

1. Tunstall's petition for a writ of habeas corpus, (Doc. 1), is **DENIED**, and this matter is **DISMISSED with prejudice**;
2. Because Tunstall does not put forth a "substantial showing of the denial of a constitutional right" and the issues presented are not "adequate to deserve encouragement to proceed further," the Court **DECLINES** to issue a certificate of appealability. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b);
3. The Court **CERTIFIES** that an appeal of this order would not be taken in good faith and **DENIES** leave to appeal in forma pauperis. Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**

                                             */s/ Michael R. Barrett*
                                             Michael R. Barrett
                                             United States District Judge